UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BADRUL ALAM,
    *Plaintiff*,

v.                                      CASE NO. 13-CV-14480

COMMISSIONER OF                   DISTRICT JUDGE MATTHEW F. LEITMAN
SOCIAL SECURITY,                    MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

### I.    RECOMMENDATION

This Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (docket 19) be **GRANTED**, that Defendant's Motion for Summary Judgment (doc. 20) be **DENIED**, and the decision of the Commissioner be **REVERSED**.

### II.    REPORT

#### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability and disability insurance benefits (DIB), and supplemental security income benefits (SSI). The matter is currently before this Court on cross-motions for summary judgment.[2] (Docs. 19, 20.)

---

[1] The format and style of this Report and Recommendation comply with the requirements of Fed. R. Civ. P. 5.2(c)(2)(B). This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

[2] The Court has reviewed the pleadings and dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

Plaintiff filed an application for a period of disability and DIB with a protective filing date of April 6, 2011, and an application for SSI with a protective filing date of October 31, 2011, alleging that he became unable to work on March 8, 2011. (Transcript, Doc.14 at 31, 66, 103, 123-24.) Plaintiff's claims were denied at the initial administrative stages. (Tr. 66, 75-78.) On June 1, 2012, Plaintiff appeared before Administrative Law Judge ("ALJ") John Dodson, who considered the application for benefits *de novo*. (Tr. 25, 42.) In a decision dated July 26, 2012, the ALJ found that Plaintiff was not under a disability within the meaning of the Social Security Act at any time from March 8, 2011, through the date of the ALJ's decision. (Tr. 31.) Plaintiff requested Appeals Council review of this decision. (Tr. 19-21.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on July 31, 2013, when the Appeals Council denied Plaintiff's request for review. (Tr. 6-8.) On October 25, 2013, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

**B.     Standard of Review**

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is "more than a scintilla . . . but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)(quoting *Cutlip v. Sec'y Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not

the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports another conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)(citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)(en banc)(citations omitted)).

"Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006)("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party")(citations omitted); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

## C. Governing Law

Disability for purposes of DIB and SSI is defined as the:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a)(DIB), 416.905(a)(SSI).

Plaintiff's Social Security disability determination is to be made through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007).

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)(cited with

approval in *Cruse,* 502 F.3d 532, 540 (6th Cir. 2007)); *see also Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994)("[c]laimant bears the burden of proving his entitlement to benefits."). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. § 416.920(a)(4)(v), (g)); *see also* 20 C.F.R. § 404.1520(a)(4)(v), (g).

### D.   ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff meets the insured status requirements through December 31, 2015, and had not engaged in substantial gainful activity since March 8, 2011. (Tr. 27.) At step two, the ALJ found that Plaintiff's degenerative lumbosacral disc disease with complaints of chronic low back and bilateral radicular pain, obesity and mild hypertension were "severe" within the meaning of the second sequential step. (Tr. 27.) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. 27.) The ALJ found that the Plaintiff had the residual functional capacity (RFC) to perform sedentary[3] work further limited to unskilled work providing a sit/stand option, no production-like standards and no exposure to hazardous machinery. (Tr. 28.) At step four, the ALJ found that Plaintiff could not perform any of his past relevant work. (Tr. 30.) At step five, the ALJ found that Plaintiff could

---

[3]

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a), 416.967(a).

5

perform jobs existing in significant numbers in the national economy and therefore he was not suffering from a disability under the Social Security Act. (Tr. 30-31.)

### E. Administrative Record

Plaintiff was 38 years old at the time of the hearing. (Tr. 45.) Plaintiff has a tenth grade education and lives with his wife and four children. (Tr. 45, 56.) At the hearing, Plaintiff testified that his last job, working at a coney island (restaurant), ended in March 2011 when his pain made it difficult to work "for an extended period of time." (Tr. 46.) He described pain that feels "like a knife stuck" in his back, pain going down his leg, a feeling like a needle being stuck underneath his toenail and, from the waist down, weakness and a feeling as if his "legs are filling up or falling asleep." (Tr. 46-47.) Plaintiff testified that his pain is primarily low back pain, radiating to the legs and toes three to four times throughout the day. (Tr. 47.) Plaintiff testified that he also has pain in the upper back and experiences muscle spasms. (Tr. 47.) He reported using a cane to take "the pressure off" of his pain. (Tr. 48.) He alleges his pain is aggravated with walking, sitting, moving from one position to another and laying down. (Tr. 48.) He testified that his pain awakens him two to three times per night. (Tr. 48.) When he takes his pain medication, he naps, usually twice per day for a half-hour to an hour. (Tr. 48.) He testified that he can stand for ten to fifteen minutes at a time and walk for about fifteen minutes without pain. (Tr. 49.)

Plaintiff testified that he takes Vicodin, Oxycontin and Lyrica for pain and sometimes takes Ambien to sleep. (Tr. 51.) He described getting pain relief for a couple of hours with the medications, but they make him drowsy. (Tr. 51.) He testified that he has trouble driving because he is in a sitting position and recently he has had bladder incontinence with his pain. (Tr. 52.) He testified that bathing, dressing and grooming are difficult due to pain and his wife puts his shoes

and socks on him. (Tr. 53.) The medical and other evidence of record is discussed below, where it is relevant to the analysis herein.

The vocational expert ("VE") testified that Plaintiff's past work as a cook in a restaurant included supervising ten employees and having the responsibility for hiring and firing. The VE classified this work as "cook, restaurant," medium in exertion and skilled per the Dictionary of Occupational Titles (DOT). (Tr. 56.) She testified that his past work as a "cook, short order," was light in exertion and at the low end of semi-skilled work per the DOT, and past work as a driver in food delivery was semi-skilled and, including other work at pizza restaurants, ranged from light to medium in exertion. (Tr. 56-57.) The VE testified that Plaintiff had also worked as a spot welder from approximately 1995 to 1998, which she characterized as "unskilled and light per the claimant's description." (Tr. 57.)

At the hearing, the ALJ asked the VE to consider an individual of the Plaintiff's age, education and past work experience who is capable of performing sedentary work with "[N]o concentrated exposure to hazards such as heights and machinery, and this would be unskilled work with no production-like standards." (Tr. 58.) The VE testified that such an individual could not perform Plaintiff's prior work. (Tr. 58.) The VE testified that such an individual could perform jobs such as hand packaging, hand assembly, visual inspecting and sorting; performed at a bench or table, they require carrying out simple, repetitive tasks. (Tr. 58.) The VE described these positions as requiring production standards, but they do not have a high speed production line, as the VE understood was excluded from the ALJ's hypothetical question. The VE testified that there are approximately 14,000 of those jobs in the State of Michigan and approximately half that number available in Southeast Michigan. (Tr. 59.) The ALJ then asked the VE what effect a sit/stand option would have on the job base. (Tr. 59.) The VE testified that it would reduce the total

7

number of statewide jobs to approximately 10,000 and again, in Southeast Michigan, approximately half that number. (Tr. 59.)

Plaintiff's attorney asked the VE what effect it would have for an individual of the same age, education and work experience as Plaintiff to "likely be off task for more than 20 percent of the work day." (Tr. 59.) The VE responded that it would preclude employment. (Tr. 59.) The attorney then asked regarding the same individual who, "because of their symptoms and need to lie down and take frequent breaks, would likely be absent for more than four days a month, would that have any effect on the work that you described, or any other work?" (Tr. 59-60.) The VE testified that in her experience, "it would be preclusive of the types of unskilled work activity that I've described." (Tr. 60.) Upon questioning from the ALJ, the VE testified that her testimony was consistent with the DOT in some respects, yet explained that the sit/stand option is not addressed in the DOT and her testimony was based on her current professional work experience. (Tr. 60.)

### F. Analysis

Plaintiff contends that the ALJ's credibility determination and step five findings were "erroneous" and that the ALJ failed to properly weight the medical opinions of record. (Doc. 19 at 6.)

### 1. Whether The ALJ's Credibility Determination Is Supported By Substantial Evidence

Plaintiff argues that the ALJ's credibility determination is not supported by substantial evidence. Plaintiff points out that the ALJ "opined that the medical evidence did not support the level of severity that the Plaintiff alleged. . . . [and] . . . found the Plaintiff's objective evidence did not support her (sic) severe allegations and did not include evidence of loss of motor function or neurological deficits." (Doc. 19 at 8.) The ALJ is required by the Regulations to explain his credibility determination with respect to Plaintiff's symptoms. 20 C.F.R. §§ 404.1529, 416.929;

8

*see also* SSR 96-4p and 96-7p. "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witnesses's demeanor and credibility." *Walters,* 127 F.3d at 531. Credibility assessments are not insulated from judicial review. Despite deference due, such a determination must nevertheless be supported by substantial evidence and contain specific reasons for the weight the adjudicator assigned to the individual's statements. *See id.*; SSR 96-7p. To the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). In addition to objective medical evidence, the ALJ must consider all the evidence of record in making his credibility determination. *See* 20 C.F.R. §§ 404.1529(c)(2), (3), 416.929(c)(2), (3); *see also Felisky*, 35 F.3d at 1039-41.

As an initial matter, the ALJ's decision shows that he did not consider all the evidence of record in determining the credibility of Plaintiff's statements about the limiting effects of his symptoms. In considering the nature of Plaintiff's treatment, the ALJ properly considered the prescribed treatment and other treatment used to alleviate pain and symptoms. However, in his credibility determination the ALJ noted that "[s]urgical evaluation has not been considered and the claimant has *not undergone physical therapy*." (Tr. 30. Emphasis added.) This is a mistake of fact that conflicts with the evidence of record. Plaintiff argues in his brief that he has undergone physical therapy. (Doc. 19 at 9.) The record shows that Plaintiff attended multiple physical therapy sessions at the Rehabilitation Institute of Michigan from May 13, 2011 through July 8, 2011. (Tr.

9

220-22.) The given reason for discharge was that "[p]rogress plateaued." (Tr. 220.) The ALJ's credibility determination is not supported by substantial evidence where it relies in part on a mistake of fact that was "material to the overall assessment of [Plaintiff's] credibility." *See Drew v. Astrue*, 2010 WL 1946335, at *4 (D.Me. May 12, 2010) ("The commissioner's omission from the record of treatment notes whose absence was material to the administrative law judge's adverse credibility finding, and the importance of that finding to the ultimate outcome, weigh against according the usual deference to that finding in this case.").

It must be noted that the physical therapy records at issue are incomplete on their face. The Discharge Summary indicates that Plaintiff started therapy on May 13, 2011, was discharged on July 8, 2011 and had 16 visits out of a scheduled 19 visits. (Tr. 220.) The record, however, contains only a discharge summary and treatment notes from June 14, 2011 (a cancelled appointment), July 6, 2011 and July 8, 2011. (Tr. 220-22.) On remand the ALJ should obtain all of the physical therapy records for the relevant time period directly from the treatment provider.

The objective evidence of record shows that Plaintiff underwent a physical examination on February 3, 2012 with consultative examiner Ernesto Bedia, M.D. (Tr. 236-38.) Dr. Bedia diagnosed "[l]ow back pain." He concluded the following:

> The patient came in ambulatory. He carries a cane but he can walk without it and his gait is stable. He can walk on his toes and heels. He can get up from the chair and get on and off the examination table without discomfort. His straight leg raising is positive on both sides from 0 to 45 degrees with complaints of pulling in the back. The deep tendon reflexes are intact. The range of movement is limited from 0 to 60 degrees on anterior flexion, 0 to 20 degrees on extension, 0 to 25 degrees on lateral flexion and rotation. (Tr. 238.)

X-rays of the lumbar spine from the same date revealed "minimal degenerative osteoarthritic changes . . . with minimal narrowing and sclerotic changes of the intervertebral disc space at L5-S1. (Tr. 239.)

Dr. Bedia opined that Plaintiff is able to engage in all physical activities, including sitting, standing, bending, stooping, carrying, pushing and pulling, upper extremity reflexes were normal, and clinic evidence did not support the need for a walking aid. (Tr. 242-43.) He concluded that Plaintiff can lift or carry up to 20 pounds frequently and up to 50 pounds occasionally, sit six hours at one time, stand four hours at one time and walk three hours at one time, and of an eight-hour workday, he could sit a total of eight hours, stand six hours and walk six hours. (Tr. 244-45.) He may frequently use his hands for reaching, handling, fingering, feeling and pushing and pulling and frequently use his feet for the operation of foot controls. (Tr. 246.) He may never climb ladders or scaffolds and may frequently engage in climbing stairs or ramps, balancing, stooping, kneeling, crouching, or crawling. (Tr. 247.)

In his credibility determination, the ALJ found that Plaintiff had "full range of motion in all joints," without citing specific records in support. (Tr. 30.) In fact, Dr. Bedia noted some reduced range of motion in the lumbar spine. (Tr. 238, 240.) This is one of the examining opinions on which the ALJ relies, yet he fails to acknowledge that the record does contain at least some evidence of a reduced range of motion. (Tr. 29.) In other examples, Bahadur Bohra, M.D., also noted range of motion at 10 to 20 degrees in the spine. (Tr. 256.)

With respect to the remainder of Plaintiff's argument that the ALJ relied on a lack of objective evidence to find him less than credible, Plaintiff does not point to any other specific evidence that contradicts the ALJ's statements regarding credibility. Instead, Plaintiff points out that the medical records document Plaintiff's "subjective complaints of pain" and cites a February 21, 2011 MRI of the lumbar spine. The February 2011 MRI report contains the following final impression:

> Lumbar disc heights and signal are normal. Minimal diffuse disc bulge and left posterior annular tear at L5-S1. No focal disc herniation. The L5-S1 disc bulge

11

slightly contacts the ventral aspect of the left S1 nerve root and the lateral aspect of the spinal canal. No significant spinal canal or neural foraminal stenosis. Mild mid and lower lumbar facet arthrosis. Minimal degenerative endplate signal changes at several levels as described. (Tr. 191, 197.)

On March 7, 2011, the treating physician reported an assessment of a lumbar disk annular tear with radiculopathy and obesity. (Tr. 188.)

It is worth noting that medical records prior to the relevant period show Plaintiff with mild degenerative changes of the lumbar spine and mild disc bulging. A May 17, 2005 MRI of the lumbar spine revealed "[d]iffuse posterior disc bulging with mild bilateral facet degenerative changes and mild biforaminal encroachment at L4-L5," "[m]ild diffuse posterior disc bulging at L5-S1," and "[p]rominent disc material involving bilateral exiting neural foramina at L2-L3." (Tr. 208.) An October 21, 2010 x-ray of the lumbosacral spine, just prior to the relevant time period herein, was normal. (Tr. 206.)

On examination at University Pain Clinic on October 28, 2011, Ashraf Mohamed, M.D., reported that Plaintiff had normal range of motion of the cervical spine, thoracic spine, lumbosacral spine and upper extremities. (Tr. 229.) Muscle strength and tone was within normal limits throughout the spine. (*Id.*) Straight leg raising was negative bilaterally. (*Id.*) Plaintiff denied muscular weakness, incontinence or bladder problems. (Tr. 229.) This record appears to be incomplete. (Tr. 229.)

Dr. Bedia's findings and opinions and Dr. Mohamed's findings on examination are much less severe than those of Olivia Batmanghelichi, M.D., who treated Plaintiff from 2007 through 2011. (Tr. 181-214.) Dr. Batmanghelichi completed three form opinions, including a Physical RFC Assessment, that Plaintiff has such restrictions as to be completely precluded from work. (Tr. 224-25, 232-35, 258-62.) The earliest of the forms, dated October 6, 2011, indicated that Plaintiff could not work at any job for six months. (Tr. 224.) In addition to selecting the most severe restrictions

12

in all categories of physical activity, the most recent forms indicate that he is "[i]ncapable of even "low stress" jobs," he would need "unscheduled breaks" "forever" or during his "lifetime" and they would occur "very often." (Tr. 234, 261.)

Plaintiff points out that electrodiagnostic testing on November 8, 2011 revealed evidence of "chronic radiculopathy changes" at L2-L3, L4-L5 and L5-S1 on both sides. (Tr. 227, 230.) These results vary from those of the electrodiagnostic testing in April 2011, just seven months prior. The April 5, 2011 report of electrodiagnostic testing shows normal nerve conduction studies of the bilateral lower extremities, normal needle examination of both lower extremities, and concludes that "[t]here is no electrodiagnostic evidence of a right or left lower extremity radiculopathy, plexopathy, or mononeuropathy." (Tr. 199.)

Plaintiff underwent lumbar medial branch blocks with fluoroscopy at L3-4 and L2-3 in November 2011. (Tr. 215-18, 228.) Plaintiff was assessed with lumbar facet arthropathy without myelopathy and lumbar spondylosis/facet syndrome. (Tr. 215.) The injections were reportedly temporarily effective. (Tr. 228.)

Records from Dr. Bohra note that on February 15, 2012, Plaintiff came to the appointment with a "single cane" and was walking with a wider space between his feet. (Tr. 256.) On February 15, 2012, Plaintiff also reported that he urinated in his clothes before going to the bathroom and that this had not happened before. (Tr. 257.) It was also noted that Plaintiff "wants to do PT." (Tr. 253.) On March 27, 2012, the treatment provider noted that Plaintiff "uses a single cane for ambulate(sic) (which is not needed)." (Tr. 252.) The ALJ properly addressed the cane in his decision, noting that at least one examining physician had reported that Plaintiff had no difficulty walking without it. (Tr. 29.)

13

The ALJ's credibility determination is not supported by substantial evidence where it is base in part on an error of fact. I suggest that the case should be remanded for consideration of the complete physical therapy records obtained directly from the therapy provider. The ALJ should also consider evidence of record regarding a reduced range of motion. It may indeed be the ALJ's ultimate conclusion that such evidence is outweighed by the presence of multiple examinations in which Plaintiff has full range of motion, yet that is not a determination to be made at this level of review, and it is not equivalent to a statement within the credibility determination that the Plaintiff "has presented with . . . full range of motion in all joints" when contradictory evidence exists in the record. (Tr. 30.)

**2. Whether The ALJ's RFC Is Supported By Substantial Evidence**

Plaintiff argues that the "ALJ made an erroneous Step Five determination that is unsupported by the substantial weight of evidence." (Doc. 19 at 11.) As Defendant correctly points out, Plaintiff cites the same fact section in support of this argument as was used in support of his credibility argument, lacking further substantive analysis. It appears that Plaintiff's argument in substance asks for a re-weighing and reconsideration of the evidence. Plaintiff's RFC argument is considered in light of errors of fact that were in part the basis of the ALJ's credibility determination.

In a hypothetical question posed to the VE, an ALJ is required to incorporate only those limitations which he finds credible and supported by the record. *See Casey v. Sec'y of Health and Human Serv.*, 987 F.2d 1230, 1235 (6th Cir. 1993). The ALJ found that Plaintiff has the RFC to perform unskilled sedentary work with no production-like standards, no exposure to hazardous machinery and allowing a sit/stand option. The "omission of the physical therapy records, which

were expressly material to his credibility finding, undermines confidence that [the ALJ's] ultimate RFC determination was supported by substantial evidence." *See Drew*, 2010 WL 1946335, at *4.

The ALJ's credibility determination is not supported by substantial evidence, so it is not possible to determine whether the hypothetical question posed to the VE was accurate and whether the ALJ's findings at step five are supported by substantial evidence. The issue of Plaintiff's credibility is material because Plaintiff argues that the "medical evidence reveals that [his] pain is severe even when sitting," it limits his ability to perform functional daily activities and therefore his limitations are not accommodated by the RFC. (Doc. 19 at 14.) The ALJ must perform a new credibility determination and, if necessary a new RFC determination with a step four determination and, if necessary, a step five determination, including those limitations he finds credible and supported by the record.

Despite Plaintiff including in his brief under "Issues for Review" a statement that "the ALJ failed to properly weigh the medical opinions of record," Plaintiff presents no argument to support this assertion. (Doc. 19 at 6.) Plaintiff fails to allege any specific medical opinions that the ALJ failed to consider or failed to explain.

"[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (citations omitted); *see also Crocker v. Comm'r of Soc. Sec.*, 2010 WL 882831 at *6 (W.D.Mich. Mar. 9, 2010)("This court need not make the lawyer's case by scouring the party's various submissions to piece together appropriate arguments.")(citations omitted). Therefore, an argument related to the medical opinions is waived.

**G.    Conclusion**

15

I suggest this case should be remanded to the Commissioner for further proceedings under sentence four of 42 U.S.C. 405(g). In *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171 (6th Cir. 1994), the court explained that

> [r]emands under both sentence four and sentence six of § 405(g) can involve the taking of additional evidence. Under sentence six, a district court, before making a final judgment, may order the Secretary to consider additional evidence because a party presents material evidence to the court that was not previously available. Under sentence four, the court makes a final judgment, affirming, reversing, or modifying the Secretary's decision and may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place.

*Id.* at 175 ("a remand pursuant to sentence four of § 405(g) is a post-judgment remand," as opposed to a remand "pursuant to sentence six of § 405(g), [which] is a pre-judgment remand").[4]

For the reasons set forth above, I suggest that Plaintiff's motion for summary judgment (doc. 19) be granted, that Defendant's motion for summary judgment (doc. 20) be denied, and that the case be remanded under sentence four of 42 U.S.C. § 405(g) for further consideration.

### III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.

---

[4]Other courts have questioned whether a remand under sentence four may include the taking of additional evidence where the requirements of sentence six are not met. *See, e.g., Jones v. Astrue*, 650 F.3d 772, 776 (D.C. Cir. 2011) (collecting cases and noting that the Supreme Court has not ruled on the issue).

*McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (*citing Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987)). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

 Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  E.D. Mich. LR 72.1(d)(3). The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                s/ 𝕮𝖍𝖆𝖗𝖑𝖊𝖘 𝕰 𝕭𝖎𝖓𝖉𝖊𝖗
                CHARLES E. BINDER
Dated: September 29, 2014            United States Magistrate Judge